**SO ORDERED.**

**SIGNED this 10 day of May, 2011.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THOMAS V. CHAPMAN | ) | Case No. 10-12576 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SOUTHWEST NATIONAL BANK, | ) | |
| Conservator for the Conservatorship of | ) | |
| Matthew Allen Chapman and the Conservatorship | ) | |
| of Jared Scott Chapman, and | ) | |
| ETHAN JOHN CHAPMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Adversary No. 10-5238 |
| | ) | |
| THOMAS V. CHAPMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING SUMMARY JUDGMENT

1

Plaintiffs Southwest National Bank ("Conservator"), as conservator for the conservatorships of Matthew and Jared Chapman, minors, and Ethan John Chapman ("Ethan") move for summary judgment on their claims that the debts owed to them by defendant and debtor Thomas V. Chapman should be excepted from his discharge for defalcation under 11 U.S.C. § 523(a)(4).[1]  The Court has reviewed the parties' respective papers and the record on summary judgment and, for the reasons set out below, concludes that the plaintiffs are entitled to judgment as a matter of law.[2]

### *Summary Judgment Standards*

Federal Rule Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."[3]  The Court's function in reviewing a motion for summary judgment is to first determine whether genuine disputes as to material facts exist for trial.  In making this determination, the Court may not weigh the evidence nor resolve fact issues.[4]  The Court must

---

[1] Plaintiffs appeared by their counsel David P. Eron.  Defendant appears *pro se.*  Ethan Chapman, originally a conservatee in the conservatorship established while he was a minor, reached the age of majority during the state court litigation regarding the conservatorships and now appears as the successor in interest and a party in his own right in this adversary.

[2] This dischargeability proceeding is a core proceeding, 28 U.S.C. § 157(b)(2)(I), over which the bankruptcy court has subject matter jurisdiction, 28 U.S.C. §§ 157(b)(1) and 1334.

[3] All future references to "Rule" will refer to the Federal Rules of Civil Procedure, which apply to adversary proceedings under Federal Rule Bankruptcy Procedure 7001, *et seq.,* unless otherwise noted.  Before December 1, 2010, Rule 56 provided that summary judgment should be rendered if there is *"no genuine issue as to any material fact* and that the movant is entitled to judgment as a matter of law."

[4] *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1154 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)); *Concrete Works of Colo., Inc. v. City and Cnty of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (Court may not resolve disputed questions of fact at the summary judgment stage).

2

construe the record in a light most favorable to the party opposing the summary judgment.[5]

Once the Court determines which facts are not in dispute, it must then determine whether those uncontroverted facts establish a sufficient legal basis upon which to grant movant judgment as a matter of law.[6] If different ultimate inferences may properly be drawn from the facts, summary judgment is not appropriate.[7]

### Facts

There is no material dispute as to the facts of this case because they have been extensively detailed by the Kansas Court of Appeals in *In re Conservatorship of Chapman*[8] and defendant has not controverted the plaintiffs' statement of uncontroverted facts.[9] The facts may be summarized as follows. Thomas and Deborah Chapman were married in 1984 and their first son, plaintiff Ethan, was born in 1989. Thomas was a police officer in Derby and, in the course of that work, he became disabled in 1989. As a result, he became entitled to a state disability payment from the Kansas Police & Firemen's Retirement System. Thomas and Deborah were divorced in 1992 and Thomas was ordered to pay child support. In 1992, KAN. STAT. ANN. § 74-4960 was amended to require that disability benefits payable to a minor must be made to a conservator.[10] Thereafter, Thomas obtained

---

[5]  *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

[6]  *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F.Supp. 406, 407 (D. Kan. 1986) (Even if there are no genuine issue of material fact, the movant still has the burden to show it is entitled to judgment as a matter of law.).

[7]  *Sec. Nat. Bank v. Belleville Livestock Comm'n Co.*, 619 F.2d 840, 847 (10th Cir. 1979).

[8]  36 Kan. App.2d 730, 144 P. 3d 771 (2006), *rev. denied* (February 13, 2007).

[9]  *See* D. Kan. LBR 7056.1(a) and (b) (Movants' facts not specifically controverted are deemed admitted.).

[10]  KAN. STAT. ANN. § 74-4960(11) (2002).

3

appointment as Ethan's conservator without bond and began using the conservatorship's funds, derived from the disability payments, to pay Ethan's child support and to reimburse himself for Ethan's medical expenses. After Thomas and Deborah reconciled, they had a child, Matthew, in 1995. Thomas became Matthew's conservator and began to reimburse himself for Matthew's medical expenses from Matthew's conservatorship disability payments. In 1997, Thomas and Deborah remarried and their third son, Jared, was born in May. They filed for divorce in August and, in October of 1997, Thomas began withdrawing from each of the two conservatorships to pay child support to Deborah. In 1998, Thomas was appointed as Jared's conservator and began to draw child support payments from that conservatorship, too. From 1992 to December of 2003, Thomas drew $36,088 from Ethan's conservatorship.[11] From 1995 through December of 2003, Thomas drew $19,560.02 from Matthew's conservatorship. From April of 1999 until December of 2003, Thomas drew $11,800 from Jared's conservatorship.

Deborah sued in probate court[12] to remove Thomas as conservator in 2004 and obtained an income withholding order from the domestic court requiring that child support be paid directly from the disability payments. Ultimately, the domestic court held that Thomas' disability payments could not be credited against his child support obligations prospectively. By contrast the probate court held that Thomas should be accorded that credit and denied Deborah's petition to remove him and for reimbursement and civil penalties. Deborah appealed. Thomas then resigned as conservator and

---

[11] Ethan reached the age of majority in 2007, thereby effecting a termination of the conservatorship.

[12] For simplicity, the District Court of Sedgwick County, Kansas, Probate Division, will be referred to as the "probate court." Likewise, the Domestic Division will be referred to as the "domestic court."

the probate court appointed Southwest National Bank as conservator of all three conservatorships.

On appeal, the Kansas Court of Appeals reversed, holding that disability benefits cannot be used as credits against a conservator's individual child support obligation and that, while Thomas misused the funds innocently, he would be ordered to reimburse the conservatorships for them. On remand, the probate court entered judgment accordingly on March 29, 2007. Thomas filed his bankruptcy case on July 29, 2010. The Bank filed this adversary proceeding on October 28, 2010.

*Analysis*

The plaintiffs allege that Thomas's innocent misuse of the conservatorship funds amounts to a defalcation that should be excepted from his discharge under § 523(a)(4). That section provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> * * *
> (4) for fraud or *defalcation* while acting in a fiduciary capacity, embezzlement, or larceny;
> * * *

The Tenth Circuit Bankruptcy Appellate Panel has interpreted this provision several times as have numerous bankruptcy courts in the Circuit. In *In re Storie*, the BAP stated that defalcation is a fiduciary's failure to account for entrusted funds that is due to a breach of fiduciary duty, whether intentional, wilful, reckless, or negligent.[13] Thus, Thomas's "innocence" does not really come into

---

[13] *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283, 288-289 (10th Cir. BAP 1997).

play.[14]  So long as he is shown to be a fiduciary and cannot account for his use of the

conservatorship funds, the debt that misuse creates must be excepted from his discharge.

This Court accords full faith and credit to the state courts' *factual findings* in *In re

Conservatorship of Chapman*.[15]  Determining whether a defalcation has occurred for determining

dischargeability is a question of federal and not state law.[16]  Thus, this Court must determine

whether the state court factual findings establish a fiduciary defalcation under the discharge

exception § 523(a)(4).  Generally, a creditor seeking to except a debt from discharge under §

523(a)(4) of the Bankruptcy Code has the burden of proving the debtor was a fiduciary.[17]  Once a

debtor is proven a fiduciary, the burden of proof shifts to him to account for the entrusted funds and

to show that he complied with his fiduciary duties.[18]

Here, it is clear that Thomas, as a court-appointed conservator, was a fiduciary at federal law.

---

[14]  *See In re Bigelow*, 271 B.R. 178, 186 (9th Cir. BAP 2001) (A defalcation under § 523(a)(4) includes an innocent default of a fiduciary.); *In re Hatcher*, 435 B.R. 615, 619 (Bankr. D. Neb. 2010) (same).

[15]  28 U.S.C. § 1738, *see Carter v. City of Emporia, Kan.*, 815 F.2d 617 (10th Cir. 1987) (under the full faith and credit statute, 28 U.S.C. § 1738, federal courts generally must give the same preclusive effect to a state court judgment that the judgment would have received in the courts of that state); *See In re Hyman,* 320 B.R. 493 (Bankr. S.D. N.Y. 2005) (state court judgment obtained by executor against Hyman would be given full faith and credit to establish executor's claim but not to determine whether there was a defalcation under the Bankruptcy Code).

[16]  *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

[17]  *Id.* at 1371-73 (Creditor has the burden to prove the fiduciary relationship; existence of fiduciary relationship is a legal issue).

[18]  *See In re Storie*, *supra* at 288 and n. 3 (burden shifts to the debtor-fiduciary to render an accounting to show that it complied with its fiduciary duties, and further noting that the Tenth Circuit never reached whether a defalcation had occurred in *In re Young*, *supra*, and therefore did not reach the appropriate burden of proof for proving a defalcation).

His trust was a trust imposed by law that arises by statute.[19]  "[M]oney or property on which the debt at issue was based was entrusted to the debtor."[20]  KAN. STAT. ANN. § 59-3078(b) sets out the duties of a conservator for a minor which he is to perform "diligently and in good faith," and "at all times shall be subject to the direction and control of the court."[21]  Thomas was a fiduciary for the purpose of § 523(a)(4) as well as at state law.[22]

The Kansas Court of Appeals likewise found that Thomas had used conservatorship funds to pay his child support obligation for the three boys. The conservatorship statute expressly withholds the power to use the minor's estate "to pay any obligation imposed by law upon the minor's natural guardian . . . including the support, maintenance, care, [and] treatment . . . of the minor . . . ."[23]  Both the Court of Appeals and the probate court found that Thomas admitted having done exactly that.   As natural guardian, he was obligated to pay support, but instead paid it from the conservatorships without a court order authorizing him to do so.

In light of these factual findings by another court of competent jurisdiction, and because there are no genuine disputes of material fact, this Court must conclude that Thomas Chapman

---

[19] *Watson v. Parker (In re Parker)*, 264 B.R. 685, 700 (10th Cir. B.A.P. 2001) (a technical trust is a trust imposed by law that arises by statute).

[20] *In re Young*, supra at 1371.

[21] KAN. STAT. ANN. § 59-3078(a)(1) (2005).

[22] This Court has previously held in *In re Tatro* that a natural guardian as defined at KAN. STAT. ANN. § 59-3051(l) is a fiduciary.  387 B.R. 833, 840 (Bankr. D.Kan. 2008).  If a natural guardian, whose status arises out of being a parent, is charged with these duties, certainly a court-appointed conservator is a fiduciary as well.

[23] KAN. STAT. ANN. § 59-3078(f)(1). *See also* § 59-3078(b)(1) and § 59-3053(b) where conservator's duty to pay reasonable charges for support of the conservatee does not affect a natural guardian's legal duty of support.

7

committed fiduciary defalcation under § 523(a)(4) when he misappropriated the funds from the three boys' conservatorships to pay his child support and medical expense obligations to their mother. As their natural guardian, he had no right to do that except upon a showing of extreme hardship to the appointing court and his receipt of orders allowing the payments.

In reaching this conclusion, the Court has carefully considered Thomas's argument that he not only acted on the advice of his counsel, but in a manner found appropriate by the probate court. Nevertheless, the Court of Appeals decision makes clear what the probate court should have gleaned from the plain meaning of KAN. STAT. ANN. § 59-3078 in the first instance – a natural guardian cannot pay his support obligation with conservatorship funds. Tenth Circuit authority is clear that motive is not a consideration in determining whether a fiduciary has committed defalcation. That is consistent with the higher duty that a fiduciary owes to his principal, particularly when the principal beneficiary is a minor child. In short, Thomas's "innocence" is no defense.

The Bank and Ethan Chapman are entitled to judgment as a matter of law, excepting these conservatorship debts from Thomas's discharge pursuant to 11 U.S.C. § 523(a)(4). The uncontroverted facts establish that these debts are in the amount of $41,219.27 for Ethan's conservatorship, $27,117.05 for Matthew's conservatorship, and $18,506.19 for Jared's conservatorship.[24] Plaintiffs' motion for summary judgment is GRANTED. A Judgment on Decision will issue this day.

# # #

---

[24] *See* Statement of Fact Nos. 28 and 29.